ANDREW G. EVANS *v.* DEPARTMENT OF
SOCIAL SERVICES
(AC 23434)

Foti, Dranginis and Peters, Js.

Argued September 17, 2003—officially released January 13, 2004

*Thomas J. Riley*, with whom, on the brief, was *Robert D. Tobin*, for the appellant (plaintiff).

*Hugh Barber*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Michael C. McKenna* and *Richard J. Lynch*, assistant attorneys general, for the appellee (defendant).

*Opinion*

DRANGINIS, J. The issue presented in this appeal is whether a medical incapacity prohibiting an individual from accessing an asset or informing another of the asset's existence renders the asset inaccessible for state administered general assistance (general assistance program) eligibility purposes. General Statutes §§ 17b-111 and 17b-257. Under the circumstances of this case, we conclude that the asset is inaccessible.[1]

The plaintiff, Andrew G. Evans, appeals from the judgment of the trial court, which dismissed his appeal from the decision of the fair hearing officer of the defen-

---

[1] In its memorandum of decision, the court raised, as an afterthought, whether it would not have been prudent to have appointed a conservator for the plaintiff. We leave for another day the question of whether the appointment of a conservator would affect the accessibility of an asset.

dant department of social services (department). The hearing officer had determined that the plaintiff was not eligible for medical coverage for the months of January and February, 2001, a determination based on the hearing officer's conclusion that the plaintiff's accessible assets exceeded the limit permitted by the general assistance program during those months.

The pertinent facts are undisputed and are as follows. The plaintiff was admitted to Hartford Hospital on January 28, 2001, following a snowmobile accident. He remained in a medically induced coma from that time until March 15, 2001. An application for benefits under the general assistance program was submitted by the plaintiff's brother on March 9, 2001, which the plaintiff amended on March 18, 2001, after regaining consciousness. The plaintiff's amended application revealed assets in the amount of $6302.58, the bulk of which represented his individual retirement account (retirement account), which no one, other than the plaintiff, had knowledge of or access to while he lay in a coma. On March 19, 2001, the department sent the plaintiff a letter requesting verification that he had reduced his assets to less than $1000, the asset eligibility limit for the general assistance program. The plaintiff redeemed the full value of his retirement account, placing his assets below the $1000 limit by March 30, 2001. The department granted the plaintiff medical coverage commencing March 1, 2001, the first day of the month in which his assets were reduced below the limit required for eligibility under the general assistance program. The department denied the plaintiff retroactive eligibility for the months of January and February, 2001.

The plaintiff claims that the hearing officer and the court improperly concluded that his medical condition could not render his retirement account, an otherwise accessible asset, inaccessible for purposes of establish-

ing general assistance program eligibility.[2] That claim hinges on the legal meaning of the term "inaccessible asset" as used in the department's Uniform Policy Manual § 4001.01.[3]

Prior to reaching the plaintiff's arguments, we first must set forth the applicable standard of review. "Administrative rules and regulations are given the force and effect of law." *Hartford Electric Light Co.* v. *Sullivan*, 161 Conn. 145, 154, 285 A.2d 352 (1971). "[I]t is [a] well established practice . . . to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." (Citations omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 138–39, 778 A.2d 7 (2001). That traditional deference, however, "is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 261–62, 788 A.2d 60 (2002). Neither party has contended that the department's interpretation of the term "inaccessible asset" as contained in § 4001.01 is time tested. When presented with a question of statutory interpretation, our review is plenary. *Smith* v. *Yurkovsky*, 265 Conn. 816, 821, 830 A.2d 743 (2003).

"According to our long-standing principles of statutory construction, our fundamental objective is to ascer-

[2] If the plaintiff's retirement account were considered an inaccessible asset for January and February, 2001, his assets during those months would total $570.94, placing those assets below the $1000 asset limit and making the plaintiff eligible for the general assistance program.

[3] Uniform Policy Manual § 4001.01 provides in relevant part: "An inaccessible asset is an asset which someone owns but, for some reason beyond his or her control, cannot readily convert to cash."

tain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Johnson* v. *Mazza*, 80 Conn. App. 155, 159, 834 A.2d 725 (2003). In this instance, there are no extratextual sources to guide our construction of the term "inaccessible asset," and we therefore focus our attention on the words of the statute to determine whether the plaintiff's retirement account was an inaccessible asset at the time he was in a medically induced coma.

Uniform Policy Manual § 4001.01 defines an inaccessible asset as "an asset which someone owns but, for some reason beyond his or her control, cannot readily convert to cash." The definition as contained in § 4001.01 of the manual is not limited to any particular class or classes of assets, but rather encompasses all assets that otherwise fit into the definition contained in § 4001.01 of the manual. The crux of the question presented in this appeal is whether a medical incapacity that renders the affected individual incapable of converting an asset to cash creates a situation that is beyond the control of the incapacitated individual. The manual contains no criteria for determining when conversion of an asset is "beyond [the individual's] control . . . ." Id.

"Where the legislature has not provided a specific definition of a word in a statute, we look to the common understanding of [that word] as expressed in a dictionary." (Internal quotation marks omitted.) *Lehn* v. *Dailey*, 77 Conn. App. 621, 626, 825 A.2d 140 (2003); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed

according to the commonly approved usage of the language"); General Statutes § 17b-10 (b) (directing policy manual to be written in plain language as described in General Statutes §§ 42-152 and 38a-295 to 38a-300, inclusive).[4] The Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) defines "beyond" as "out of the reach or sphere of," and defines "control" as "to exercise restraining or directing influence over" and "power or authority to guide or manage." While the plaintiff was medically incapacitated, he had no actual power or authority to manage his retirement account; the retirement account was out of his reach for purposes of converting it into cash. Therefore, for the months of January and February, 2001, when the plaintiff was in a medically induced coma, his retirement account was an inaccessible asset as defined by the department's Uniform Policy Manual § 4001.01.

The department claims that the plaintiff's retirement account would be considered an available asset under federal medicaid law as that law has been construed in other states. The department argues that this construction should be imputed to § 4001.01 because eligibility under the general assistance program is modeled on medicaid eligibility. We disagree. One of the purposes of the general assistance program was to implement "a state medical assistance program for persons ineligible for Medicaid . . . ." General Statutes § 17b-257. It is axiomatic that in choosing to construct that independent program, the state may establish its own independent eligibility criteria. We find, therefore, that medicaid decisions from other jurisdictions are unpersuasive for purposes of determining the breadth of the

---

[4] One of the tests established by General Statutes § 42-152 to determine whether a document is written in plain language is whether that document uses everyday words. Likewise, under General Statutes §§ 38a-295 to 38a-300, the Insurance Plain Language Act, "readable language" is, in part, comprised of "readily understandable terms . . . ." General Statutes § 38a-297 (a).

definition of an inaccessible asset contained in Uniform Policy Manual § 4001.01 for *Connecticut's* general assistance program.

The department also claims that § 4015.05C[5] of the manual provides a more specific definition of an inaccessible asset than does § 4001.01, one that requires an impediment raised by a third party. We disagree with that construction of § 4015.05C. Uniform Policy Manual § 4015.05C lists five assets considered inaccessible; the regulation provides, however, that inaccessible assets "include, but are not limited to" those contained in the list. "[T]he statutory language 'but is not limited to' which is coupled with the enumeration of specific . . . [assets] is indicative of a legislative intent not to occupy the entire field by express definition . . . ." *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 90, 411 A.2d 42 (1979). Concluding that this nonexhaustive list constitutes a legal definition of the term "inaccessible assets" for purposes of general assistance program eligibility would render the definition contained in § 4001.01 unnecessary. "[S]tatutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." (Internal quotation marks

---

[5] Uniform Policy Manual § 4015.05C, entitled "Types of Inaccessible Assets," provides: "Assets considered inaccessible to the assistance unit include, but are not limited to:

"1. property in probate;

"2. a jointly held asset which cannot practically be subdivided and which a joint holder refuses to liquidate;

"3. a security deposit on rental property or utilities;

"4. a trust in which the trustee who is a person or institution not under the direction of the assistance unit, refuses to release all or part of the funds to the unit. This type of asset is sometimes considered available to the assistance unit in the MA program, however, as described in Section 4030;

"5. personal property which is no longer in the physical possession of the assistance unit if the person now possessing the asset refuses to return it to the unit."

omitted.) *Biasetti* v. *Stamford,* 250 Conn. 65, 81, 735 A.2d 321 (1999). To give purpose to the complete wording of both § 4015.05C and § 4001.01, the list of inaccessible assets contained in Uniform Policy Manual § 4015.05C must be read as illustrating types of inaccessible assets as opposed to defining inaccessible assets.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.