SUNSCRIPT PHARMACY CORPORATION, Petitioner v. NORTH CAROLINA BOARD OF PHARMACY, Respondent

No. COA00-1089

(Filed 4 December 2001)

**Pharmacists— discipline of permit holder for pharmacist's conduct—statutory authority**

The trial court erred by reversing the Board of Pharmacy's decision suspending petitioner's pharmacy permit due to mistakes in filling prescriptions by petitioner's pharmacist. Although there is an ambiguity in the statutes concerning the authority of the Board to discipline a permit holder for the conduct of its licensed pharmacist, the legislature intended the Board to have that authority and the Board in this case cited statutes that place

duties on a pharmacy permit holder. However, it was stressed that a permit holder's responsibility for the conduct of its licensed pharmacists extends only to the licensed pharmacist's conduct while engaged in the operation of the permit holder's pharmacy and that the conduct must result in the breach of a duty imposed on the permit holder. N.C.G.S. §§ 90-85.30, 90-85.38(a), (b), and 106-134.1.

Appeal by respondent from order entered 13 June 2000 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 21 August 2001.

*Yates, McLamb & Weyher, L.L.P., by Michael C. Hurley, for petitioner-appellee.*

*Bailey & Dixon, L.L.P., by Carson Carmichael, III, for respondent-appellant.*

CAMPBELL, Judge.

Respondent North Carolina Board of Pharmacy ("the Board") appeals from the trial court's order reversing the Board's final agency decision suspending the pharmacy permit of Sunscript Pharmacy Corporation ("petitioner") pursuant to N.C. Gen. Stat. § 90-85.38(b). We disagree with the trial court's interpretation of the applicable statutes and reverse the order under review.

The Board is the occupational licensing agency responsible for licensing pharmacists and issuing pharmacy permits throughout North Carolina. N.C. Gen. Stat. §§ 90-85.15, -85.21 (1999). The Board is also responsible for enforcing the laws pertaining to the distribution and use of drugs. N.C. Gen. Stat. § 90-85.6(a) (1999). Petitioner is a foreign corporation authorized to do business in North Carolina and is engaged in operating pharmacies in this State that are not open to the general public, but rather provide pharmaceutical services to long-term care facilities owned and operated by Sun Healthcare. The pharmacy at issue in these proceedings is petitioner's pharmacy located in Pink Hill, North Carolina. At all times relevant hereto, petitioner's pharmacy in Pink Hill was being operated pursuant to a pharmacy permit (Permit No. 6467) duly issued by the Board, and was subject to the full regulatory authority of the Board.

On 28 August 1998, the Board received information indicating that an error had been committed in the dispensing of a prescription

for the drug Dilantin at petitioner's Pink Hill pharmacy. The Board's investigation revealed that on 27 July 1998 petitioner received a doctor's prescription for a long-term care facility patient which called for "Dilantin 100 mg capsules BID and Dilantin 50 mg BID." Petitioner did not have the Dilantin 50 mg, so John Conrad Hunt ("Hunt"), a licensed pharmacist and employee of petitioner, dispensed liquid Dilantin with instructions on the label that read "10 cc = 50 mg." However, for the patient to receive the correct dosage, the label should have read "2 cc = 50 mg." Although the patient was administered the Dilantin between 29 July 1998 and 1 August 1998, and the patient died on 11 August 1998, it could not be determined whether the incorrect dosage of Dilantin caused or contributed to the patient's death. The Board's investigation further revealed that Hunt had committed four other dispensing errors between 21 July 1998 and 4 August 1998, including dispensing the wrong drug, dispensing the wrong strength of drug, and using the wrong patient name on a prepared drug order.

On 8 October 1998, the Board issued a "Notice of Hearing" to petitioner and Hunt regarding the five dispensing errors uncovered by the Board's investigation. The purpose of the hearing was to determine whether the alleged dispensing errors committed by petitioner and Hunt violated the laws governing the practice of pharmacy and the distribution of drugs, thereby subjecting petitioner and Hunt to the Board's disciplinary authority under N.C.G.S. § 90-85.38. Specifically, the Board alleged that the dispensing errors committed by petitioner and Hunt violated N.C. Gen. Stat. §§ 90-85.30, 90-85.38(a)(6), 90-85.38(a)(9), 90-85.38(b) and 106-134.1.

The hearing was held on 27 October 1998, at the commencement of which petitioner and Hunt stipulated to the allegations concerning the five dispensing errors. The evidence presented at the hearing indicated that all of the errors had been initially committed by pharmacy technicians who worked under the supervision of Hunt. The evidence also indicated that Hunt was terminated from employment by petitioner on 28 August 1998. On 25 January 1999, the Board issued a final agency decision making findings of fact consistent with the parties' stipulations and the evidence presented at the hearing and concluding that the dispensing errors committed by petitioner and Hunt constituted violations of N.C.G.S. §§ 90-85.30, 90-85.38(a)(6), 90-85.38(a)(9) and 106-134.1.

As a result, the Board suspended Hunt's pharmacist license (License No. 14427) for seven days, with the suspension stayed for

two years upon Hunt complying with several conditions. Likewise, the Board suspended petitioner's pharmacy permit (Permit No. 6467) for seven days, with the suspension also stayed for two years upon petitioner complying with restrictions on the number of prescriptions it could fill, more stringent requirements for reporting future dispensing errors to the Board, and other conditions.

On 23 February 1999, petitioner filed a petition in Wake County Superior Court seeking judicial review of the Board's final agency decision pursuant to N.C. Gen. Stat. § 150B-45.[1] Petitioner alleged that the Board's decision prejudiced the substantial rights of petitioner, in that the decision was "void for want of jurisdiction, violate[d] provisions of the constitution of this State and the United States, exceed[ed] the statutory authority and jurisdiction of the Board, [was] unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted, [was] arbitrary and capricious, and [was] otherwise affected by errors of law." Included among petitioner's listed exceptions to the Board's final agency decision was the following:

> (h) In excess of Respondent's statutory authority and jurisdiction and in violation of the guarantees of due process in the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution, Respondent has improperly imputed to Petitioner the findings of negligence made against another subject of its investigation.
>
> . . . .

On 26 May 2000, the trial court entered a Memorandum of Decision reversing the Board's decision to suspend petitioner's pharmacy permit, reasoning:

> [The] Board does not have the authority to discipline permittee pharmacy for the negligence of a pharmacist employee who is also licensed by the Board. Also[,] the techs [pharmacy technicians] who were negligent were being supervised by the same pharmacist licensee. As Petitioner argues[,] [the] Board has no authority to discipline on a theory of vicarious liability. If the legislature intended this then it must expressly say so and G.S. 90-85.38(b) does not.

---

1. Hunt subsequently withdrew from this judicial review proceeding. Therefore, the Board's decision insofar as it pertains to Hunt is not at issue in this appeal.

On 13 June 2000, the trial court entered an order reversing respondent's decision. Respondent now appeals the trial court's ruling.

The dispositive issue on appeal is whether the trial court erred in its determination that the Board lacks the statutory authority to discipline a pharmacy permit holder for the negligence of a licensed pharmacist who is employed by the permit holder. In so holding, the trial court ruled that the Board's final agency decision was based on an error of law. Thus, the trial court was required to exercise de novo review. *See Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994) (stating that when petitioner argues that an agency's decision was based on an error of law, de novo review is required). Our review of the trial court's Memorandum of Decision and its order indicates that the trial court appropriately exercised de novo review in making its determination on this issue. However, we must determine whether the trial court did so properly. *See Eury v. N.C. Employment Security Comm.*, 115 N.C. App. 590, 597, 446 S.E.2d 383, 388 (1994) (stating that this Court's reviewing process of a superior court order regarding an agency decision is twofold: (1) determining whether the trial court exercised the appropriate scope of review, and, if appropriate, (2) deciding whether the court did so properly).

In making this determination, we start by examining the disciplinary authority of the Board, which is set forth in N.C.G.S. § 90-85.38. Pursuant to N.C.G.S. § 90-85.38(a), the Board may discipline[2] a licensee or an applicant for a license to practice pharmacy, if the licensee or applicant has:

(1) Made false representations or withheld material information in connection with securing a license or permit;

(2) Been found guilty of or plead guilty or nolo contendere to any felony in connection with the practice of pharmacy or the distribution of drugs;

(3) Indulged in the use of drugs to an extent that renders him unfit to practice pharmacy;

(4) Made false representations in connection with the practice of pharmacy that endanger or are likely to endanger the health or safety of the public, or that defraud any person;

---

2. This discipline may include a letter of reprimand, a suspension, restriction, revocation or refusal to grant or renew a license, or a requirement that the licensee successfully complete remedial education. N.C. Gen. Stat. § 90-85.38(a) (1999).

(5) A physical or mental disability that renders him unfit to practice pharmacy with reasonable skill, competence and safety to the public;

(6) Failed to comply with the laws governing the practice of pharmacy and the distribution of drugs;

(7) Failed to comply with the rules and regulations of the Board;

(8) Engaged in, or aided and abetted an individual to engage in, the practice of pharmacy without a license; or

(9) Was negligent in the practice of pharmacy.

N.C. Gen. Stat. § 90-85.38(a)(1)-(9) (1999). Pursuant to N.C.G.S. § 90-85.38(b), the Board is authorized to suspend, revoke, or refuse to grant or renew any pharmacy permit[3] for the same conduct as stated in N.C.G.S. § 90-85.38(a).

In its final agency decision, the Board concluded that the dispensing errors committed by Hunt and petitioner violated both N.C.G.S. § 90-85.38(a)(6) (failure to comply with the laws governing the practice of pharmacy and the distribution of drugs) and N.C.G.S. § 90-85.38(a)(9) (negligence in the practice of pharmacy). In support of its determination that petitioner and Hunt had failed to comply with the laws governing the practice of pharmacy and distribution of drugs in violation of N.C.G.S. § 90-85.38(a)(6), respondent cited N.C.G.S. §§ 90-85.30[4] and 106-134.1.[5]

In reversing the decision of the Board, the trial court simply stated that the Board did not have the authority to discipline a pharmacy permit holder for the negligence of one of its pharmacists who is also licensed by the Board. The trial court further stated that if the Legislature had intended for the Board to have such disciplinary authority it would have expressly granted it in N.C.G.S. § 90-85.38(b).

---

3. Pursuant to N.C. Gen. Stat. § 90-85.21, every pharmacy, i.e., any place where prescription drugs are dispensed or compounded, must register and obtain a permit from the Board.

4. N.C.G.S. § 90-85.30 requires that "[t]he pharmacy file copy of every prescription shall include the brand or trade name, if any, or the established name and the manufacturer of the drug product dispensed." N.C. Gen. Stat. § 90-85.30 (1999). As a result of the dispensing errors that were made, the pharmacy's file copy of the prescriptions involved did not contain all of the correct information required by N.C.G.S. § 90-85.30.

5. N.C. Gen. Stat. § 106-134.1 establishes requirements for the dispensing of prescription drugs which, if not followed, result in the drug being deemed to be misbranded while held for sale.

In support of its decision, the trial court relied on *Federgo Discount Center v. Department of Professional Regulation, Board of Pharmacy,* 452 So.2d 1063 (Fla. App. 1984), in which the Florida Court of Appeals concluded that if the Legislature wished to hold community pharmacy permit holders strictly liable for the acts of pharmacists who are separately licensed by the state, then it should have done so in uncertain terms. We find the trial court's reliance on *Federgo* misplaced and we disagree with the trial court's conclusion on this issue.

It is a well-established rule of statutory construction that it is the function of the judiciary to construe a statute when the meaning of a statute is in doubt. *In re Declaratory Ruling by N.C. Comm'r of Ins.,* 134 N.C. App. 22, 27, 517 S.E.2d 134, 139, *disc. review denied,* 351 N.C. 105, 540 S.E.2d 356 (1999).

"In construing the laws creating and empowering administrative agencies, as in any area of law, the primary function of a court is to ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished. The best indicia of that legislative purpose are 'the language of the statute, the spirit of the act, and what the act seeks to accomplish.' "

*Id.* (quoting *Comr. of Insurance v. Rate Bureau,* 300 N.C 381, 399, 269 S.E.2d 547, 561 (1980) (citations omitted)). However, "[w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning. . . ." *State v. Green,* 348 N.C. 588, 596, 502 S.E.2d 819, 824 (1998), *superseded by statute on other grounds as stated in In re J.L.W.,* 136 N.C. App. 596, 525 S.E.2d 500 (2000).

The plain language of N.C.G.S. 90-85.38(b) provides that the Board "may suspend, revoke, or refuse to grant or renew any permit [i.e., discipline the permit holder] for the same conduct as stated in [N.C.G.S. 90-85.38(a) (setting out the conduct for which a licensed pharmacist may be disciplined)]." N.C. Gen. Stat. § 90-85.38(b) (1999). However, the statute does not make it clear whether N.C.G.S. § 90-85.38(b) is limited in its application to conduct actually committed by a permit holder, or whether a permit holder can be disciplined for conduct falling within N.C.G.S. § 90-85.38(a) that is committed by a licensed pharmacist employed by the permit holder. This ambiguity requires this Court to examine the spirit of the

act and what the act seeks to accomplish to determine the meaning of N.C.G.S. § 90-85.38(b).[6]

N.C. Gen Stat. § 90-85.2 sets forth the purpose of the North Carolina Pharmacy Practice Act ("the Act") to "insure minimum standards of competency and to protect the public from those who might otherwise present a danger to the public health, safety and welfare." N.C. Gen. Stat. § 90-85.2 (1999). In order to fulfill this purpose, the Legislature created the North Carolina Board of Pharmacy and charged it with responsibility for enforcing the provisions of the Act and the laws pertaining to the distribution and use of drugs. N.C. Gen. Stat. § 90-85.6 (1999). The Board was also granted responsibility over the licensing of all pharmacists throughout the State, and the permitting of all pharmacies seeking to operate in the State. In order to enforce its regulations and protect the public health, safety and welfare, the Board was granted disciplinary authority over licensees and permit holders by N.C.G.S. § 90-85.38. In light of the purpose of the Act to insure minimum standards of competency and to protect the public health, safety and welfare, we conclude, contrary to the decision of the trial court, that the Legislature did intend for the Board to have authority to discipline a permit holder for the conduct of one of its licensed pharmacists.

Further, we find the trial court's reliance on *Federgo* to be misplaced because the court in *Federgo* did not hold that a permit holder can never be disciplined for the conduct of a licensed pharmacist employed by it. Rather, the court held that in order for a permit holder to be disciplined for the conduct of one of its licensed pharmacists, that conduct must result in a breach of duty imposed on the permit holder. In fact, the court in *Federgo* specifically stated that "[h]ad the licensed pharmacist failed to adequately maintain records, or had he otherwise compromised the security of the drugs in the prescription department [duties which the statutes expressly imposed on the permit holder], a different result could be indicated . . . ." *Federgo*, 452 So.2d at 1066. For this reason, we find *Federgo* to be consistent with our holding.

We further find the reasoning of the California Court of Appeals in *Arenstein v. California State Board of Pharmacy*, 265 Cal. App.

---

6. This ambiguity is most obvious in a situation such as the one in the instant case, where the permit holder is a corporation which can only act through its employees, some of whom have to be licensed pharmacists in order to allow the pharmacy to operate.

2d 179, 71 Cal. Rptr. 357 (1968) to be consistent with our holding. There the court affirmed the suspension of a pharmacy permit based upon the conduct of its pharmacist employees in refilling prescriptions without authorization. In so affirming, the court stated:

> If a licensee elects to operate his business through employees, he must be responsible to the Licensing Authority for their conduct and the exercise of his license and he is responsible for the acts of his agents or his employees *done in the course of his business in the operation of the license.* One permitted to maintain and conduct the pharmacy may be disciplined by the Pharmacy Board for the unlawful acts of his employees *while engaged in the conduct and operation of the pharmacy,* although the permitee does not authorize the unlawful acts and did not have actual knowledge of the activities. This would be particularly true of a corporate permitee which could act only through its officers, agents, or employees.

*Id.* at 192-93, 71 Cal. Rptr. at 365-66 (citations omitted) (emphasis added). We stress that a permit holder's responsibility for the conduct of its licensed pharmacists only extends to the licensed pharmacists' conduct while engaged in the conduct and operation of the permit holder's pharmacy. Furthermore, in order for the conduct of a licensed pharmacist to subject a permit holder to discipline, that conduct must result in the breach of a duty that is imposed on the permit holder.

In the instant case, the Board supported its discipline of petitioner's permit by citing violations of N.C.G.S. §§ 90-85.30 and 106-134.1, which place duties on a pharmacy permit holder. Therefore, we hold that the Board's discipline of petitioner's permit for the conduct of Hunt was within the Board's statutory authority.

For the foregoing reasons, the trial court's order is reversed and this cause is remanded to the trial court for entry of an order reinstating respondent's final agency decision.

Reversed and remanded.

Judges GREENE and BRYANT concur.