NORTH CAROLINA BOARD OF PHARMACY, Plaintiff v. THE RULES REVIEW
COMMISSION, ET AL., Defendant

No. COA04-929

(Filed 1 November 2005)

## 1. Pharmacists— working hours—regulation

Any regulation of pharmacies by N.C.G.S. §§ 90-85.6, 90-85.21, and 90-85.32 does not extend to regulating pharmacists' working hours. The trial court correctly ruled that plaintiff Board of Pharmacy was not acting within its authority when it adopted such a rule.

## 2. Constitutional Law— administrative rule review sought— constitutional challenge not raised

The trial court correctly refused to rule on plaintiff Board of Pharmacy's constitutional challenge to the authority of the Rules Review Commission (RRC) where plaintiff sought RRC approval but did not raise a constitutional challenge until after it received an unfavorable outcome.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by plaintiff from orders entered 6 February 2004 and 5 April 2004 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 19 April 2005.

*Bailey & Dixon, L.L.P., by Carson Carmichael, III, M. Denise Stanford, and Warren T. Savage, for plaintiff-appellant.*

*McMillan, Smith & Plyler, by William W. Plyler and Stephen T. Smith, for defendant-appellee.*

*Attorney General Roy Cooper, by Solicitor General Christopher G. Browning, Jr., and Special Deputy Attorney General Gary R. Govert, for defendant-intervenor-appellee.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by Stanford D. Baird, William G. Scoggin, Ann M. Anderson, and Daniel J. Palmieri, for North Carolina Citizens for Business & Industry, North Carolina Home Builders Association, North Carolina Pork Council, Inc., North Carolina Retail Merchants Association, North Carolina Association of Realtors, Inc., and North Carolina Forestry Association, amici curiae.*

*Southern Environmental Law Center, by Donnell Van Noppen, III and Amy E. Pickle, for North Carolina Coastal Federation, North Carolina Shellfish Growers Association, Environmental Defense, and North Carolina Trout Unlimited, amici curiae.*

*Broughton Wilkins Sugg & Thompson, P.L.L.C., by Benjamin E. Thompson, III, for North Carolina Retail Merchants Association, amici curiae.*

BRYANT, Judge.

The North Carolina Board of Pharmacy (plaintiff-Board of Pharmacy) appeals from two orders: (1) an order entered 6 February 2004, affirming the Rules Review Commission's[1] (defendant-RRC) objection to adopting the proposed 21 NCAC 46.2506 (Rule .2506)[2] and denying plaintiff's claims seeking validation of Rule .2506; and (2) an order entered 5 April 2004, denying plaintiff's Motion to Alter or Amend Judgment.

On 15 June 1998, plaintiff published Notice of Rule-Making Proceedings in the North Carolina Register giving notice that it was considering adopting rules addressing pharmacist working hours. On 14 August 1998, plaintiff published proposed Rule .2506 in the North Carolina Register and scheduled a public hearing. Following the hearing, plaintiff adopted the final language and submitted proposed Rule .2506 to RRC for consideration at its December 1998 meeting.

On 17 December 1998, the RRC objected to proposed Rule .2506 because it found that plaintiff lacked statutory authorization to enact this rule[3]. Plaintiff responded that it would not change proposed Rule

---

1. The RRC is an independent executive branch agency responsible for reviewing proposed administrative rules in accordance with Chapter 150B of the North Carolina General Statutes. N.C. Gen. Stat. § 143B-30.1-2 (2003). The RRC consists of ten members appointed by the General Assembly who review proposed agency rules to determine whether they meet the requirements set forth in N.C.G.S. § 150B-21.9(a) (2003). *See also,* N.C.G.S. § 143B-30.1a (2003).

2. Proposed Rule .2506 states "[a] permit holder shall not require a pharmacist to work longer than 12 continuous hours per work day. A pharmacist working longer than six continuous hours per work day shall be allowed during that time period to take a 30 minute meal break and one additional 15 minute break."

3. When a permanent rule is submitted for review, the RRC must determine whether the rule meets all of the following criteria: "(1) It is within the authority delegated to the [submitting] agency by the General Assembly[,] (2) It is clear and unambiguous[,] (3) It is reasonably necessary to implement or interpret an enactment of the General Assembly, or of Congress, or a regulation of a federal agency . . . [, and] (4) It was adopted in accordance with [the APA's procedural requirements for rulemaking]." N.C. Gen. Stat. § 150B-21.9(a).

.2506, and at its February 1999 meeting, the RRC decided not to remove its objection and returned proposed Rule .2506 to the Board of Pharmacy.

On 22 March 1999, plaintiff filed a Petition for Declaratory Ruling with the RRC, pursuant to section 150B-4 of the North Carolina General Statutes, seeking a declaration as to the validity of proposed Rule .2506. The RRC failed to issue any ruling or response to the Board of Pharmacy's Petition for Declaratory Ruling within sixty days, thereby resulting in a denial of the petition.

On 18 June 1999, plaintiff filed a complaint against the RRC and its members in their official capacities seeking a declaratory judgment that the RRC's actions were unconstitutional and that plaintiff had statutory authority to enact proposed Rule .2506. Also, plaintiff sought injunctive relief requiring the RRC to remove its objection and allow enactment of proposed Rule .2506. Plaintiff appeals.

---

Plaintiff's issues on appeal are whether the trial court erred: (1) by concluding plaintiff lacked the statutory authority to adopt proposed Rule .2506; and (2) by refusing to rule on its constitutional challenge to the authority of the RRC to veto the implementation of agency rules. We conclude the trial court did not err and affirm the judgment of the trial court.

### Standard of Review

N.C. Gen. Stat. § 150B-1 *et seq.* governs both superior court and appellate court review of administrative agency decisions. *CVS Pharm., Inc. v. N.C. Bd. of Pharm.*, 162 N.C. App. 495, 498-99, 591 S.E.2d 567, 569 (2004). Our Supreme Court has recently reiterated the standard of judicial review of final agency decisions: .

> On judicial review of an administrative agency's final decision, the substantive nature of each assignment of error dictates the standard of review. Under the APA, an agency's final decision may be reversed or modified only if the reviewing court determines that the petitioner's substantial rights may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

*N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 658-59, 599 S.E.2d 888, 894 (2004) (citations omitted). "Questions of law receive *de novo* review," whereas fact-intensive issues "such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test." *Id.* Thus where a party alleges that an agency's decision is based upon an error of law, is in excess of the agency's statutory authority, was made upon unlawful procedure, or is in violation of constitutional provisions, pursuant to N.C. Gen. Stat. § 150B-51(b)(1)-(4), the court must undertake *de novo* review. *Id.* "Under the *de novo* standard of review, the trial court 'consider[s] the matter anew [ ] and freely substitutes its own judgment for the agency's.' *Id.* at 660, 599 S.E.2d at 895.

I

**[1]** Plaintiff first alleges the trial court erred by concluding plaintiff lacked the statutory authority to adopt proposed Rule .2506. We disagree.

In examining whether an agency erred in interpreting a statute it administers, an appellate court employs a *de novo* review. *County of Durham v. North Carolina Dep't of Envtl. & Natural Resources*, 131 N.C. App. 395, 396, 507 S.E.2d 310, 311 (1998) (citation omitted). Legislative intent controls the meaning of statutes. *Francine Delany New Sch. for Children, Inc. v. Asheville City Bd. of Educ.*, 150 N.C. App. 338, 345, 563 S.E.2d 92, 97 (2002) (citation omitted). "To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish." *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 895 (1998). When interpreting a statute, the court first looks to the statute's plain meaning. *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 510 S.E.2d 159 (1999).

Plaintiff, N.C. Board of Pharmacy, is the occupational licensing board for North Carolina pharmacists and the executive branch agency responsible for the enforcement of the North Carolina Pharmacy Practice Act. N.C. Gen. Stat. § 90-85.2 *et seq.* (2003). The

General Assembly created the Board of Pharmacy for a defined purpose and conferred upon it specific duties:

> Creation.—The responsibility for enforcing the provisions of this Article and the laws pertaining to the distribution and use of drugs is vested in the Board. The Board shall adopt reasonable rules for the performance of its duties. The Board shall have all of the duties, powers and authorities specifically granted by and necessary for the enforcement of this Article, as well as any other duties, powers and authorities that may be granted from time to time by other appropriate statutes.

N.C. Gen. Stat. § 90-85.6(a) (2003). Proposed Rule .2506 states:

> A permit holder shall not require a pharmacist to work longer than 12 continuous hours per work day. A pharmacist working longer than six continuous hours per work day shall be allowed during that time period to take a 30 minute meal break and one additional 15 minute break.

Plaintiff argues it has the duty to regulate pharmacies, and, therefore, has the authority to adopt proposed Rule .2506. Plaintiff cites its statutory rule making authority under N.C.G.S. §§ 90-85.6, 90-85.21 and 90-85.32. As the trial court concluded, and upon our review of these statutes, any regulation of pharmacies does not extend to regulating working hours as set out in proposed Rule .2506. According to N.C.G.S. § 90-85.6(a), the Board shall have "all of the duties, powers and authorities *specifically granted by* and necessary for the enforcement" of the Act. (Emphasis added). The Act does not specifically grant plaintiff the authority to regulate working hours at a pharmacy. As such, N.C.G.S. § 90-85.6(a) does not provide authority for the Board of Pharmacy to enact proposed Rule .2506. We note that Chapter 90 of the North Carolina General Statutes deals with medicine and allied occupations such as dentistry, optometry, chiropractic, nursing, occupational therapy and massage therapy. Each of these professions is regulated because each affects the public health, safety and welfare. For each profession, the North Carolina General Assembly created a regulatory board to issue licenses and discipline licensees. However, a careful review of these statutes reveals that none of these regulatory boards has authority to regulate working hours of its licensees. Absent specific authority, plaintiff cannot regulate the pharmacists' working hours as stated in proposed Rule .2506.

The second statute cited by plaintiff, N.C. Gen. Stat. § 90-85.21(a), requires that "each pharmacy in North Carolina shall annually register with the Board . . . [and] identify . . . all pharmacy personnel employed in the pharmacy." N.C.G.S. § 90-85.21 (2003). However, this statute, construed liberally and given its plain meaning, does not lead to the conclusion that the Board has authority to regulate working hours at a pharmacy.

The third statute cited by plaintiff, N.C.G.S. § 90-85.32(a), authorizes the Board of Pharmacy to "adopt rules governing the filling, refilling and transfer of prescription orders" in an effort to "assure the safe and secure distribution of drugs." *See e.g. Sunscript Pharm. Corp. v. N.C. Bd. of Pharm.*, 147 N.C. App. 446, 555 S.E.2d 629 (2001) (finding Act gave authority for Board of Pharmacy to discipline a permit holder for conduct of pharmacist in the filling of a prescription). However, setting limits on the number of hours a pharmacist can work and requiring breaks for meals and otherwise, clearly does not concern the filling, refilling and transfer of prescriptions. The North Carolina Department of Labor is the only entity with authority to regulate working hours of pharmacists in pharmacies, and such regulation is solely through the Wage and Hour Act:

> The wage levels of employees, hours of labor, payment of earned wages, and the well-being of minors are subjects of concern requiring legislation to promote the general welfare of the people of the State without jeopardizing the competitive position of North Carolina business and industry.

N.C. Gen. Stat. § 95-25.1(b) (2003). The Wage and Hour Act makes it clear that legislation is necessary to regulate working hours. As such, the Board is not authorized to adopt a rule such as proposed Rule .2506 in an attempt to regulate working hours.

Finally, the General Assembly gave the Commission the authority to determine whether a proposed rule is within the authority delegated to the agency by the legislature. *See* N.C.G.S. § 150B-21.9(a)(1) (2003). The Commission properly objected to proposed Rule .2506 as outside the authority of the Board of Pharmacy. Therefore, we uphold the trial court's ruling that plaintiff was not acting within the authority delegated to it by the General Assembly. This assignment of error is overruled.

II

**[2]** Plaintiff next contends the trial court erred by refusing to rule on its constitutional challenge to the authority of the RRC to veto the implementation of agency rules. We disagree.

A constitutional question is only properly reached when necessary for resolution of the case and unavoidable in any way. *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) ("[T]he courts of this State will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds."). North Carolina "courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, . . . adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions." *Little v. Wachovia Bank & Trust Co.*, 252 N.C. 229, 243, 113 S.E.2d 689, 700 (1960). North Carolina appellate courts should not pass upon a constitutional question unless it affirmatively appears that the question was raised and passed upon in the trial court. *State v. Wilkinson*, 344 N.C. 198, 221, 474 S.E.2d 375, 387 (1996). "It is not the role of the appellate courts to render advisory opinions in matters that are not properly before them." *Carolinas Med. Ctr. v. Emplrs & Carriers Listed in Exhibit A*, 172 N.C. App. 549, ——, 616 S.E.2d 588, 591 (2005) (citing *Wiggins v. Pyramid Life Ins. Co.*, 3 N.C. App. 476, 478, 165 S.E.2d 54, 56 (1969)). Our Supreme Court has held:

> The rule is well settled that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens. The principle is an application of the broader doctrine of quasi-estoppel, which states that where one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it.

*Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 226, 517 S.E.2d 406, 413 (1999) (citations and quotations omitted).

By proposing Rule .2506, the Board of Pharmacy sought the benefit of the RRC's approval. However, the Board of Pharmacy did not challenge the constitutionality of the rule-making process outlined in Article 2A of Chapter 150B until the RRC objected to proposed Rule .2506. Only after the Board of Pharmacy received an unfavorable outcome did it allege the process was unconstitutional. The trial court

did not err by refusing to rule on the Board of Pharmacy's constitutional challenge to the authority of the RRC.

This assignment of error is overruled.

Affirmed.

Judge TIMMONS-GOODSON concurs.

Judge STEELMAN concurring in part and dissenting in part.

Judge TIMMONS-GOODSON concurred in this opinion prior to 31 October 2005.

STEELMAN, Judge, concurring in part and dissenting in part.

I concur in the majority's holding that the trial court did not err in refusing to rule on the constitutional question. However, I must respectfully dissent as to the portion of the opinion affirming the ruling of the trial court that the Pharmacy Board lacked authority to adopt Rule .2506.

The proposed rule in question reads as follows:

.2506 Pharmacist Work Conditions.

A permit holder shall not require a pharmacist to work longer than 12 continuous hours per work day. A pharmacist working longer than six continuous hours per work day shall be allowed during that time period to take a 30 minute meal break and one additional 15 minute break.

The statutes relevant to whether the Pharmacy Board has the authority to enact this proposed rule are as follows:

§ 90-85.6 Board of Pharmacy; creation; membership; qualification of members.

(a) Creation.—The responsibility for enforcing the provisions of this Article and the laws pertaining to the distribution and use of drugs is vested in the Board. The Board shall adopt reasonable rules for the performance of its duties. The Board shall have all of the duties, powers and authorities specifically granted by and necessary for the enforcement of this Article, as well as any other duties, powers and authorities that may be granted from time to time by other appropriate statutes.

§ 90-85.21. Pharmacy permit

> (a) In accordance with Board regulations, each pharmacy in North Carolina shall annually register with the Board on a form provided by the Board. The application shall identify the pharmacist-manager of the pharmacy and all pharmacy personnel employed in the pharmacy.

§ 90-85.32. Rules pertaining to filling, refilling, transfer, and mail or common-carrier delivery of prescription orders

> (a) Except as otherwise provided in this section, the Board may adopt rules governing the filling, refilling and transfer of prescription orders not inconsistent with other provisions of law regarding the distribution of drugs and devices. The rules shall assure the safe and secure distribution of drugs and devices.

The majority opinion rests upon the assertion that "setting limits on the number of hours a pharmacist can work and requiring breaks for meals and otherwise, clearly does not concern the filling, refilling and transfer of prescriptions." I disagree.

The accurate filling of prescriptions is an essential requirement of the practice of pharmacy. The North Carolina Pharmacy Practice Act (Article 4A of Chapter 90 of the North Carolina General Statutes) was enacted by the General Assembly, requiring mandatory licensure of pharmacists to "insure minimum standards of competency and to protect the public from those who might otherwise present a danger to the public health, safety and welfare." N.C. Gen. Stat. § 90-85.2. Under N.C. Gen. Stat. § 90-85.6(a) the North Carolina Board of Pharmacy is charged with enforcing the provisions of the Pharmacy Practice Act. The majority asserts that there is no relationship between the continuous hours worked by a pharmacist and their ability to accurately perform their work. Clearly this is not correct. The consequences of an improperly filled prescription can be deadly to a customer. This was recognized by the North Carolina Board of Pharmacy when it enacted 21 NCAC 46.1811 effective 1 July 1996, which reads as follows:

> Pharmacists shall not dispense and permit holders shall not allow a pharmacist to dispense prescription drugs at such a rate per hour or per day as to pose a danger to the public health or safety.

The proposed rule is simply a refinement of the existing rule, setting forth specific guidelines for the consecutive hours to be worked by a pharmacist. As with 21 NCAC 46.1811, the proposed rule is limited to pharmacists, who are defined in N.C. Gen. Stat. § 90-85.3(p) as persons licensed to practice pharmacy.

The majority further argues that the sole entity with the authority to regulate working conditions for pharmacists is the Department of Labor, and the sole method of such regulation is through the Wage and Hour Act. N.C. Gen. Stat. § 95-25.1 *et seq.* The purpose of the Wage and Hour Act is to balance the welfare of workers, through insuring reasonable wages and working hours, against the competing needs of North Carolina businesses. *Amos v. Oakdale Knitting Co.*, 102 N.C. App. 782, 786, 403 S.E.2d 565, 567 *rev'd on other grounds*, 331 N.C. 348, 416 S.E.2d 166 (1992). Thus, the welfare interests protected by the regulation of hours under the Wage and Hour Act are those of the worker, not the consuming public.

State agencies other than the Department of Labor have the authority to regulate working hours for the purpose of protecting the general public from over-worked employees. For example, in an effort to prevent accidents, the Department of Transportation regulates the number of hours commercial truck drivers can operate their vehicles. N.C. Gen. Stat. §§ 20-377, 20-381; 19A N.C.A.C. 3D.0801(b)(1). In the instant case, the purpose of the proposed rule was the protection of the welfare of the general public from the hazards inherent in over-worked and over-tired pharmacists filling prescriptions. This regulation is well within the mandate granted the N.C. Pharmacy Board by the General Assembly.

In light of the purpose of the Pharmacy Practice Act, and the scope of authority given to the N.C. Board of Pharmacy under this Act, I would hold that the N.C. Pharmacy Board was authorized to enact the proposed rule and that the Rules Review Commission was in error in rejecting it.