### FREDERICK CORNELIUS v. DEPARTMENT OF BANKING
### (AC 26706)

Flynn, C. J., and Bishop and West, Js.

Argued February 6—officially released March 28, 2006

*Kerry M. Wisser*, with whom, on the brief, was *Nathan A. Schatz*, for the appellant (plaintiff).

*Lorrie Lewis Adeyemi*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Frederick Cornelius, doing business as Focus Mortgage, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant, the department of banking, ordering that the license of the plaintiff to do business as a first mortgage broker and lender be revoked and that his license to do business as a secondary mortgage broker not be renewed. On appeal, the plaintiff claims that (1) he was not given adequate notice of the bases of the charges against him and (2) absent proof that he personally engaged in intentional or negligent conduct, the defendant had no reasonable basis to act as it did. We affirm the judgment of the trial court.

The court found the following facts, which are relevant to the plaintiff's appeal. "On July 25, 2001, the plaintiff was licensed by the Connecticut department of banking to engage in the business of making first mortgage loans and the business of acting as a first mortgage broker in Connecticut pursuant to General Statutes § 36a-489. That 'first mortgage' license was subsequently renewed. On June 24, 2003, the plaintiff filed a renewal application for a license as a secondary mortgage broker.

"The plaintiff's first and secondary loan brokerage activities are carried out under the trade name of Focus Mortgage, a sole proprietorship, which at all times relevant to these proceedings employed three registered loan originators.

"Prior to June, 2003, Brian Camilleri, a licensed real estate appraiser of Camilleri Appraisal Company, performed approximately 100 real estate appraisals for the plaintiff's loan brokerage business. Both Camilleri and his partner last performed an appraisal for the plaintiff's loan brokerage business in May, 2003.

"The files of Focus Mortgage were found to contain copies of fourteen appraisal reports and, or, inspection reports that purport to be authored by Camilleri, but which Camilleri did not prepare or sign. They contained forged signatures. The commissioner [of banking (commissioner)] found that Focus Mortgage had submitted forged Camilleri appraisal-inspection reports to a lender (Provident Funding Associates, L.P.) in regard to six of its loan transactions. Those forged Camilleri appraisal-inspection reports relied on by the commissioner are found in the record.

"While the evidence showed that the forged appraisals were 'submitted' to Provident Funding Associates, L.P., by Focus Mortgage, nothing in the administrative record shows that those documents were created by anyone at Focus Mortgage, and there was no evidence that it was the plaintiff, Frederick Cornelius, who personally created or transmitted any of the forged appraisals. Thus, while the name 'Focus Mortgage' appears on certain of the loan documentation connected with the subject appraisal reports, the name of Frederick Cornelius does not. The commissioner's decision concludes that Focus Mortgage submitted the forged appraisals in connection with loans that it had brokered, and the decision expressly states that 'the record did not establish whether [the plaintiff] personally forged the appraisals or whether the forgery was done by an employee. . . .

"[T]he commissioner revoked the plaintiff's first mortgage lender-broker license and refused to renew

the plaintiff's secondary mortgage broker license. The commissioner properly determined that the plaintiff's submission of false appraisals in support of mortgage loan applications fully supported the finding that the plaintiff could not operate his mortgage broker business soundly and efficiently, in the public interest and consistent with the purposes of the first and secondary mortgage acts as outlined in the General Statutes, chapter 668, part I (A) and (B)."

The court affirmed the defendant's decision and dismissed the plaintiff's appeal. This appeal followed.

We begin by articulating the standard of review for an appeal from the decision of an administrative agency. "Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . .

"General Statutes § 4-183 (j), which describes the scope of judicial review of administrative decisions,

provides in relevant part: The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings." (Citation omitted; internal quotation marks omitted.) *Lovan C.* v. *Dept. of Children & Families*, 86 Conn. App. 290, 293–94, 860 A.2d 1283 (2004).

I

The plaintiff first claims that he was not given adequate notice of the charges against him. We are not persuaded.

The following additional facts are relevant to the plaintiff's claim. By letter dated December 15, 2003, the defendant notified the plaintiff of the pending charges, pursuant to General Statutes § 4-182 (c).[1] In the letter,

---

[1] The December 15, 2003 letter reads as follows:

"Dear Mr. Cornelius:

"According to Connecticut [d]epartment of [b]anking records, Frederick Cornelius d/b/a Focus Mortgage ('FM'), currently holds a first mortgage lender broker license, number 7666.

"Based upon an investigation conducted by this [d]epartment, it appears that FM, while acting as a mortgage broker, submitted at least [fourteen] appraisal reports to various lenders under the name 'Camilleri Appraisal Company' to support mortgage loan applications. The appraisal reports contain the signature of Brian Camilleri, a principal of Camilleri Appraisal Company, without Mr. Camilleri's knowledge, consent or authorization. This claim, if proven true, would form the basis for the issuance of a notice of

the defendant stated that Focus Mortgage, acting as a mortgage broker, had submitted appraisals to various lenders to support mortgage loan applications without the knowledge or authorization of the appraiser. The defendant indicated that those actions would form the basis of the issuance of a notice of intent to revoke Focus Mortgage's licenses pursuant to General Statutes § 36a-494. Subsequently, on January 5, 2004, the defendant issued to the plaintiff an order of summary suspension, a notice of intent to revoke his first mortgage lender-broker license and a notice of his right to a hearing. Also on January 5, 2004, the defendant issued to the plaintiff a notice of intent to refuse to renew his secondary mortgage broker license and a notice of his right to a hearing. The statutory reference, pursuant to § 36a-494 (a) (1), in the statement of charges read as follows: "The commissioner may . . . revoke . . . any [first mortgage lender/broker] license, in accordance with the provisions of [General Statutes §] 36a-51, for any reason which would be sufficient grounds for the commissioner to deny an application for a license under [General Statutes §§] 36a-485 to 36a-498, inclusive, or if the commissioner finds that the licensee . . . has done any of the following: . . . (B) committed any fraud . . . or misrepresented, concealed, suppressed, intentionally omitted or otherwise intentionally failed to disclose any of the material particulars of any first mortgage loan transaction, including disclosures required by subdivision (6) of subsection (a) of [General Statutes §] 36a-493, or part III of chapter 669 or regulations adopted pursuant thereto, to anyone entitled to such information . . . ."[2]

intent to revoke FM's license pursuant to [General Statutes §] 36a-494 of the Connecticut General Statutes.

"Pursuant to Section 4-182 (c), we are presenting you with an opportunity to show compliance with all lawful requirements for the retention of the license. . . ."

[2] General Statutes § 36a-494 (a) (1) provides in relevant part: "The commissioner may suspend, revoke or refuse to renew any license, in accordance with the provisions of section 36a-51, for any reason which would be suffi-

The plaintiff claims that because of the ellipsis after the word "licensee," the defendant chose not to rely on the language in the ellipsed section, which provides "or any proprietor, director, officer, member, partner, shareholder, trustee, employee or agent of such licensee" and, therefore, he was not put on notice that the defendant was taking action against his licenses for actions of his employees or agents.[3]

"[D]ue process requires that the notice given must . . . fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law." (Internal quotation marks omitted.) *Levinson* v. *Board*

cient grounds for the commissioner to deny an application for a license under sections 36a-485 to 36a-498a, inclusive, or if the commissioner finds that the licensee *or any proprietor, director, officer, member, partner, shareholder, trustee, employee or agent of such licensee has done any of the following* . . . (B) committed any fraud, misappropriated funds or misrepresented, concealed, suppressed, intentionally omitted or otherwise intentionally failed to disclose any of the material particulars of any first mortgage loan transaction, including disclosures required by subdivision (6) of subsection (a) of section 36a-493, or part III of chapter 669 or regulations adopted pursuant thereto, to anyone entitled to such information . . . ." (Emphasis added.)

[3] With regard to notice, General Statutes § 4-182 (a) provides: "When the grant, denial or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this chapter concerning contested cases apply."

General Statutes § 4-177 provides the general notice requirements for contested cases as follows: "(a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

"(b) The notice shall be in writing and shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; and (4) a short and plain statement of the matters asserted. If the agency or party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished. . . ."

General Statutes § 4-182 (c) provides in relevant part: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action . . . . "

*of Chiropractic Examiners*, 211 Conn. 508, 535, 560 A.2d 403 (1989). "[A]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity [to be heard]." (Internal quotation marks omitted.) *Worsham* v. *Greifenberger*, 242 Conn. 432, 440, 698 A.2d 867 (1997), quoting *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). "[A]n essential function of notice is to enable the recipient to choose for himself whether to appear or default, acquiesce or contest . . . with regard to proceedings affecting the recipient's interests." (Citation omitted; internal quotation marks omitted.) *Worsham* v. *Greifenberger*, supra, 440. "The fundamental reason for the requirement of notice is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought. . . . Adequate notice will enable parties having an interest to know what is projected and, thus, to have an opportunity to protest. . . . [N]otice . . . is not required to contain an accurate forecast of the precise action which will be taken on the subject matter referred to in the notice. It is adequate if it fairly and sufficiently apprises those who may be affected of the nature and character of the action proposed, so as to make possible intelligent preparation for participation in the hearing . . . ." (Citations omitted; internal quotation marks omitted.) *Hartford Electric Light Co.* v. *Water Resources Commission*, 162 Conn. 89, 110, 291 A.2d 721 (1971).

The plaintiff argues that the precise statutory basis must have been contained in the January 5, 2004 charging documents and that it was improper for the court to look to the § 4-182 notice of December 15, 2003. "Notice [however] is not a perfunctory act in order to satisfy the technicalities of a statute, but has, as its

basis, constitutional dimensions." (Internal quotation marks omitted.) *In re Donna M.*, 33 Conn. App. 632, 638, 637 A.2d 795, cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994). As noted, the purpose of notice is to advise the party of the law and fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law. The December 15, 2003 letter, though arguably not the charging document, referred to the actions of Focus Mortgage, as a mortgage broker, as the basis of the potential revocation of the plaintiff's licenses pursuant to § 36a-494. We believe that any reasonable recipient of the December, 2003 and January, 2004 communiques from the defendant would have read them together, and, together, they provide adequate notice to the plaintiff of the charges against him.

In light of the letter of notice pursuant to § 4-182, which was dated December 15, 2003, and the subsequent charging documents of January 5, 2004, we conclude that the plaintiff was informed adequately that the conduct of Focus Mortgage, and not solely the conduct of the plaintiff, individually, was under investigation. Accordingly, his claim that he was not given adequate notice must fail.

II

Next, the plaintiff claims that to revoke a license under § 36a-494 (a) (1) on the basis of a finding of lack of character, reputation, integrity or general fitness under § 36a-489 (a), or not to renew a license under General Statutes § 36a-517 (a) (1) on the basis of a similar finding under General Statutes § 36a-513 (c), the defendant was required to prove intentional or negligent conduct by the plaintiff, individually, and could not rely solely on the conduct of his employees. We disagree.

Although there is no Connecticut appellate authority addressing the issue of the liability of a licensee for the

acts of his employees,[4] the fundamental principles of the doctrine of respondeat superior are well established in Connecticut. "Under the doctrine of respondeat superior, a master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business. . . . The master is not held on any theory that he personally interferes to cause the injury. It is simply on the ground of public policy, which requires that he shall be held responsible for the acts of those whom he employs, done in and about his business, even though such acts are directly in conflict with the orders which he has given them on the subject. . . . [I]n order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business. . . . But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." (Citations omitted; internal quotation marks omitted.) *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 500–501, 656 A.2d 1009 (1995).

Section 36a-489 (a) requires the commissioner to make certain findings regarding the character, reputation, integrity and general fitness of the licensee before issuing or renewing a first mortgage lender or broker license.[5] The plaintiff asserts that the "general fitness"

[4] We note that other states have held licensees responsible for the acts of their employees. See *Ford Dealers Assn.* v. *Dept. of Motor Vehicles*, 32 Cal. 3d 347, 360, 650 P.2d 328, 185 Cal. Rptr. 453 (1982); see also *California Assn. of Health Facilities* v. *Dept. of Health Services*, 16 Cal. 4th 284, 295, 940 P.2d 323, 65 Cal. Rptr. 2d 872 (1997); *Sunscript Pharmacy Corp.* v. *Board of Pharmacy*, 147 N.C. App. 446, 454, 555 S.E.2d 629 (2001), cert. denied, 355 N.C. 292, 561 S.E.2d 506 (2002).

[5] General Statutes § 36a-489 (a) provides in relevant part: "If the commissioner finds, upon the filing of an application for a license, that the applicant meets the requirements of subsection (a) of section 36a-488, and that the financial responsibility, character, reputation, integrity and general fitness of the applicant and of the partners thereof if the applicant is a partnership, of the members if the applicant is a limited liability company or association,

requirement in §§ 36a-489 (a) and 36a-513 (c) refers only to the general fitness of the applicant, which, in the case of a sole proprietorship necessarily refers to a single individual and not to others. The plaintiff's claim is belied by the language of those statutes, as well as that of § 36a-494 (a) (1).[6] Although § 36a-489 (a) does not expressly address sole proprietorships, it delineates those individuals to whom the commissioner looks in determining the general fitness of various corporate organizations, including principal employees of corporations. It follows that the commissioner reasonably would examine the acts of the few employees of a sole proprietorship, done in furtherance of the business of the proprietorship, in assessing the character or general fitness of the organization. Indeed, § 36a-494 (a) (1) provides for suspension, revocation or refusal to renew a license upon the wrongdoing of the licensee or any employee or agent of such licensee. Accordingly, the plaintiff's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

and of the officers, directors and principal employees if the applicant is a corporation, are such as to warrant belief that the business will be operated soundly and efficiently, in the public interest and consistent with the purposes of sections 36a-485 to 36a-498a, inclusive, the commissioner may thereupon issue the applicant the license. If the commissioner fails to make such findings, or if the commissioner finds that the applicant has made a material misstatement in the application, the commissioner shall not issue a license, and shall notify the applicant of the denial and the reasons for such denial. Any denial of an application by the commissioner shall, when applicable, be subject to the provisions of section 46a-80."

[6] In fact, the plaintiff concedes this point in his brief. In his brief, the plaintiff argues: "Thus, while General Statutes § 36a-494 (a) (1) (B) recognizes the 'respondeat superior' concepts alluded to in the [a]gency [d]ecision, and discussed by the trial court in its decision, the [defendant], in its formal statement of charges chose not to cite the portion of that statute that would have made the legal theory applicable to the administrative proceedings against the plaintiff."