EDWARD L. LEHN III ET AL. *v.* MICHAEL DAILEY
ET AL.
(AC 22863)

Bishop, West and Hennessy, Js.

---

Submitted on briefs January 10—officially released July 1, 2003

*Leslie S. Hollo* filed a brief for the appellant (defendant Michael Dailey).

*Robert A. DeMarco* filed a brief for the appellees (plaintiffs).

WEST, J. The defendant Michael Dailey[1] appeals from the judgment of the trial court awarding the plaintiffs, Edward L. Lehn III and his wife, Barbara A. Lehn, $34,205.68 in damages arising from the defendant's sale of a certain security to the plaintiffs. The defendant claims that the court improperly concluded that he violated (1) General Statutes § 36b-16 and (2) General Statutes § 36b-5 (a) (2). We affirm the judgment of the trial court.

The following facts are necessary for our resolution of the defendant's appeal. The plaintiffs inherited some funds that they wanted to invest. Because they had little knowledge of potential suitable investments, the plaintiffs attended several investment seminars. In the autumn of 1997, the plaintiffs met the defendant at a seminar on applying for financial aid for college. The defendant assisted the plaintiffs in evaluating the financial aid packages. He also made some recommendations for investments that would help the plaintiffs pay for college expenses. Pursuant to those recommendations, the plaintiffs took advantage of one such investment opportunity. The plaintiffs made a profit on that investment.

In April or May, 1998, the defendant approached the plaintiffs with a promissory note issued by South Mountain Resort and Spa, Inc. (South Mountain). By its terms, the note was payable at the end of nine months, bearing an interest rate of 10.9 percent. The defendant represented that the note was fully insured and that the plaintiffs' investment would be returned even if South

---

[1] The plaintiffs, Edward L. Lehn III and his wife, Barbara A. Lehn, brought this action against four defendants: Dailey, James P. Carpenter, Investors Capital Corporation and Global Insurance Company, Ltd. Carpenter, Investors Capital Corporation and Global Insurance Company, Ltd., are not parties to this appeal. We therefore refer in this opinion to Dailey as the defendant.

Mountain went out of business. In July, 1998, the plaintiffs purchased that promissory note for $18,000. The plaintiffs' understanding was that interest payments in the amount of $164 were to be sent monthly during the lifetime of the note. The plaintiffs, however, received only three interest payments, those for September, October and December, 1998. In March, 1999, South Mountain offered to renew the note, which was due to mature the following month. The plaintiffs declined that offer and demanded payment of the principal and accrued interest. South Mountain failed to remit the demanded payment. Instead, the plaintiffs were notified that South Mountain was filing a petition for relief pursuant to chapter 7 of the United States Bankruptcy Code.

The plaintiffs then contacted Global Insurance Company, the guarantor of the note, requesting that the principal and accrued interest be paid. Global did not respond to that request. The plaintiffs then commenced the present action.

Following a one day court trial, the court rendered judgment in favor of the plaintiffs.[2] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court improperly concluded that because the promissory note was due and payable in a full nine months, it qualifies as a security that should have been registered pursuant to § 36b-16 prior to being offered or sold within the state. The defendant concedes that the promissory note was

---

[2] The defendants Investors Capital Corporation and Global Insurance Company, Ltd., were defaulted for failure to appear. The court awarded joint and several damages in the amount of $34,205.68 against the defendants Dailey, Carpenter and Investors Capital Corporation. The court also rendered judgment against Global Insurance Company, Ltd., and awarded damages to the plaintiffs in the amount of $22,698.

not registered, but he argues that pursuant to General Statutes § 36b-21 (a), the security is specifically exempt from the registration requirement of § 36b-16. We disagree.

Because the issue presented to us is one of statutory construction, our review is plenary. *Spears* v. *Garcia*, 263 Conn. 22, 27, 818 A.2d 37 (2003). We begin our analysis by noting that it is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003) (en banc).

General Statutes § 36b-16 provides: "No person shall offer or sell any security in this state unless (1) it is registered under sections 36b-2 to 36b-33, inclusive, (2) the security or transaction is exempted under section 36b-21, or (3) the security is a covered security provided such person complies with any applicable requirements in subsections (c), (d) and (e) of section 36b-21." General Statutes § 36b-21 (a) provides in relevant part: "The following securities are exempted from sections 36b-16 and 36b-22 . . . (10) any commercial paper which

arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which evidences an obligation to pay cash within nine months of the date of issuance, exclusive of days of grace, or any renewal of such paper which is likewise limited, or any guarantee of such paper or of any such renewal . . . ."

The plain language of § 36b-21 exempts from the registration requirements those securities that are due and payable within nine months. The statute does not provide a definition of the term "within." Where the legislature has not provided a specific definition of a word in a statute, "we look to the common understanding of [that word] as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Russo*, 259 Conn. 436, 449, 790 A.2d 1132, cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002); see General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly").

"Within" is defined as "a function word to indicate situation or circumstance in the limits or compass of: as . . . not beyond the quantity, degree, or limitations of . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1999). The New College Edition of the American Heritage Dictionary (1983) defines the word "within" as "[i]nside the limits or extent of."

In the present case, the subject promissory note, by its own terms, came due at the end of a full nine months from the date of issuance. No payment, therefore, was required until that nine month period had expired. Because the maturity of the note in question falls beyond the statutory limit, we conclude that it is not

exempt under § 36b-21 (a) and that, consequently, it should have been registered.

## II

We next consider the defendant's claim that the court improperly concluded that he violated § 36b-5 (a) (2). The defendant argues that liability pursuant to § 36b-5 (a) (2) requires a finding that a defendant acted with scienter. We disagree.

General Statutes § 36b-5 (a) provides in relevant part: "No person who directly or indirectly receives compensation or other remuneration for advising another person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise, shall . . . (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading . . . ."

The court found the following relevant facts. The defendant's only knowledge about the soundness of the investment came from James P. Carpenter, a licensed broker and principal of the Investors Capital Corporation. According to the defendant, Carpenter's knowledge regarding the investment was gained from a personal visit to the site and personal knowledge of the financial situation of South Mountain. Carpenter told the defendant that the investment was safe and that it was secured by a bonding company. In addition, Carpenter provided the defendant with some of the resort's promotional material. On the basis of those promotional materials and his conversations with Carpenter, the defendant advised the plaintiffs that the investment was safe because it was secured by a bond, and he assured the plaintiffs that the investment was guaranteed "no matter what."

The court concluded that the defendant "had an obligation in his capacity as a financial adviser to make a reasonable attempt to verify on his own the statements made by South Mountain in [its] brochures and commercials, and representations made by Carpenter before suggesting to the plaintiffs his own opinion as to the wisdom of the contemplated investment, which he promoted." We agree.

The defendant does not dispute that he was compensated for his efforts in selling the security to the plaintiffs. He also has not challenged the finding that the plaintiffs did not know, nor did they have reason to know, that the information regarding the promissory note and the soundness of the investment came from a third party and not from the defendant's own research and analysis. We must determine, therefore, whether the defendant's failure to disclose the source of his knowledge as to the soundness of the investment that he recommended to the plaintiffs was a misrepresentation or an omission of a material fact under § 36b-5 (a) (2). Additionally, we must decide whether liability pursuant to § 36b-5 (a) (2) requires that the investment adviser acted with the intent to defraud.

A

We first consider whether the omission at issue involved a material fact. A material fact is a fact that "a reasonable investor would have considered significant in making investment decisions." *Ganino* v. *Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000). A fact need not be outcome determinative for it to be material. See id., 161–62; *Folger Adam Co.* v. *PMI Industries, Inc.*, 938 F.2d 1529, 1533–34 (2d Cir.), cert. denied, 502 U.S. 983, 112 S. Ct. 587, 116 L. Ed. 2d 612 (1991). On the other hand, "[a]n omitted fact may be immaterial if the information is trivial . . . or is so basic that any investor could be expected to know it . . . ." (Citations

omitted; internal quotation marks omitted.) *Ganino* v. *Citizens Utilities Co.*, supra, 162; see also *Levitin* v. *PaineWebber, Inc.*, 159 F.3d 698, 702 (2d Cir. 1998), cert. denied, 525 U.S. 1144, 119 S. Ct. 1039, 143 L. Ed. 2d 47 (1999). Those definitions are in general accord with various state court interpretations of the analogous language found in the Uniform Securities Act. See,.e.g., *Bradley* v. *Hullander*, 272 S.C. 6, 21–22, 249 S.E.2d 486 (1978); *Aspelund* v. *Olerich*, 56 Wash. App. 477, 481–82, 784 P.2d 179 (1990).

In the present case, the defendant had successfully advised the plaintiffs regarding prior investment opportunities. On the basis of that investment history and their familiarity with the defendant, the plaintiffs relied on his statements regarding the soundness of the promissory note investment. Thus, in promoting the investment, the defendant relied on the goodwill that he had established with the plaintiffs. It was not unreasonable for the plaintiffs, having been successfully advised by the defendant in the past, to rely on his statements in deciding to invest in the security. The plaintiffs may have been more cautious, however, had they known that the positive assessment of the security was not based on the defendant's own research, but on representations made by a third party unknown to them.

Because the standard for determining whether a particular omission involved a material fact is an objective rather than a subjective one, the plaintiffs need not prove that they would have acted differently if they had been in the possession of full information. See *Ganino* v. *Citizens Utilities Co.*, supra, 228 F.3d 162. It is enough that they would have considered such information an important element in their decision-making process. See id. Accordingly, we conclude that in advising the plaintiffs to invest in the South Mountain note, the defendant did omit a material fact in violation of § 36b-5 (a) (2).

B

We next consider what degree of scienter, if any, is required to support a violation of § 36b-5 (a) (2). We do not believe a plaintiff needs to show that the misstatement or omission of material fact was motivated by an intent to commit fraud. Rather, we conclude that liability may be premised on either intentional or negligent misrepresentations or omissions.

At the outset of our analysis, we note that the courts of this jurisdiction have not construed the specific statute before us, § 36b-5. Nevertheless, our courts have interpreted an analogous statute within the Connecticut Uniform Securities Act, General Statutes § 36b-4, which contains language identical to the relevant language of § 36b-5.[3] The parties have offered no reason, and we can think of none, why the interpretations of § 36b-4 should not guide our analysis of § 36b-5.

To establish liability pursuant to § 36b-4 (a) (2), "the buyer must prove: (1) that the . . . violator offered or sold a security by means of either an untrue statement of a material fact, or an omission to state a material fact necessary to make any statements made, in the circumstances of their making, not misleading; and (2) that the buyer did not know of the untruth or omission."

---

[3] General Statutes § 36b-4 (a) provides in relevant part: "No person shall, in connection with the offer, sale or purchase of any security, directly or indirectly . . . (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading . . . ." As stated previously, General Statutes § 36b-5 (a) provides in relevant part: "No person who directly or indirectly receives compensation or other remuneration for advising another person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise, shall . . . (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading . . . ."

*Connecticut National Bank* v. *Giacomi,* 242 Conn. 17, 46, 699 A.2d 101 (1997).

Our Supreme Court has stated that an individual charged with a violation of § 36b-4 "has a defense to such an action if it meets its burden of persuading the fact finder that it did not know, and in the exercise of reasonable care could not have known, of the untruth or omission." Id. That language clearly suggests that a violation of the statute does not require an intent to defraud, but may be predicated on a negligent omission of a material fact.

Both the plain language of § 36b-5 (a) (2) and the legislative genealogy of that language support the conclusion that liability under the statute does not require an intent to defraud. First, that interpretation is in accord with the language of the statute itself. As does § 36b-4, § 36b-5 (a) provides for three broad categories of prohibited action. The first and third subdivisions specifically mention fraud as an element of the violation.[4] By contrast, subdivision (2) of § 36b-5 (a) does not contain any overt reference to fraud. Indeed, making intent to defraud an element of subdivision (2) would render it redundant because a fraudulent statement or omission would appear already to be prohibited under either subdivision (1), employing a scheme or artifice to defraud and subdivision (3), engaging in any act, practice or course of business operating as a fraud or deceit.

Additionally, because the Connecticut Uniform Securities Act, General Statutes §§ 36b-2 to 36b-33, is a substantial adoption of the major provisions of the 1956 Uniform Securities Act, we may look to interpretations

---

[4] Thus, prohibited activity includes employing "any device, scheme or artifice to defraud"; General Statutes § 36b-5 (a) (1); or engaging in "any act, practice or course of business which operates or would operate as a fraud or deceit . . . ." General Statutes 36b-5 (a) (3).

of that act in interpreting analogous language in our own statutes. See *Connecticut National Bank* v. *Giacomi*, 233 Conn. 304, 323–24, 659 A.2d 1166 (1995), on appeal after remand, 242 Conn. 17, 699 A.2d 101 (1997). Under the Uniform Securities Act, civil liability may be imposed for both intentional and negligent misrepresentations or omissions. 3 A. Bromberg & L. Lowenfels, Securities Fraud & Commodities Fraud (1982) § 8.4 (210). That interpretation is in accord with numerous states' interpretations of the relevant language contained in their adopted versions of the Uniform Securities Act. See *Diaz Vicente* v. *Obenauer*, 736 F. Sup. 679 (E.D. Va. 1990) (interpreting Virginia Securities Act); *Crook* v. *Shearson Loeb Rhoades, Inc.*, 591 F. Sup. 40 (N.D. Ind. 1983) (interpreting Indiana Securities Act); *Banton* v. *Hackney*, 557 So. 2d 807 (Ala. 1989) (interpreting Alabama Securities Act); *State* v. *Kershner*, 15 Kan. App. 2d 17, 801 P.2d 68 (1990) (specific intent not required to violate Kansas Securities Act); *State* v. *Fries*, 214 Neb. 874, 337 N.W.2d 398 (1983) (negligent misrepresentation or omission sufficient for civil liability under Uniform Securities Act; scienter required only for criminal liability); *Bradley* v. *Hullander*, supra, 272 S.C. 21–22 (negligent misrepresentation sufficient to violate South Carolina Uniform Securities Act); *Aspelund* v. *Olerich*, supra, 56 Wash. App. 482 (scienter not required in fraud, misrepresentation action under Securities Act of Washington); *State* v. *Temby*, 108 Wis. 2d 521, 322 N.W.2d 522 (1982) (intent to defraud not required under Wisconsin Uniform Securities Act).

Notwithstanding those interpretations of the relevant statutory language, the defendant relies on *Hitchcock* v. *deBruyne*, 377 F. Sup. 1403, 1405 (D. Conn. 1974), for the proposition that, under the Connecticut Uniform Securities Act, the liability of a nonseller associated with a seller who made false statements or a material omission in connection with a sale of securities requires

scienter and cannot be predicated on mere negligence. That case is of dubious value to the present inquiry, however, because the United States District Court for the District of Connecticut merely assumed that our state courts would interpret the Connecticut Uniform Securities Act to have the same scienter requirement as found in federal court interpretations of the analogous language of rule 10b-5 of the Securities and Exchange Commission.[5] Id. Subsequent to *Hitchcock*, however, our Supreme Court expressly rejected a slavish devotion to federal interpretations of rule 10b-5 in interpreting the Connecticut Uniform Securities Act. In particular, our Supreme Court rejected interpretations of the Connecticut Uniform Securities Act premised on federal interpretations of rule 10b-5 subsequent to the promulgation of the Uniform Securities Act in 1956. See *Connecticut National Bank* v. *Giacomi*, supra, 233 Conn. 323–24. "[I]n the absence of other indicators of legislative intent, we look [not to the meaning of rule 10-5 at the time that the Connecticut Uniform Securities Act was adopted, but] instead to the meaning of the Uniform Act . . . ." Id., 324. Thus, where the interpretations of rule 10b-5 and the analogous language of the Uniform Securities Act have diverged since 1956, it is the jurisprudence under the Uniform Securities Act that is most compelling. See id. We conclude, therefore, that scienter is not required to establish liability for a misrepresentation or omission pursuant to § 36b-5 and that the court applied the appropriate standard of liability under § 36b-5 (a) (2).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The Uniform Securities Act language at issue in this appeal "was modeled on rule 10b-5 of the Securities and Exchange Commission (SEC), which, in turn, was modeled on § 17 (a) of the federal Securities Act of 1933. L. Loss, Commentary on the Uniform Securities Act (1976) official comment to § 101, p. 6. Although modeled on § 17 (a), rule 10b-5 was promulgated by the SEC pursuant to its authority under § 10 (b) of the Securities Exchange Act of 1934." *Connecticut National Bank* v. *Giacomi*, supra, 233 Conn. 321.